UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LASALLE NATIONAL LEASING
CORPORATION,

               Plaintiff/Counter-Defendant,          No. 03-CV-70482-DT

vs.                                         Hon. Gerald E. Rosen

LYNDECON, L.L.C., CRAIG PASTOR,
TIM PASTOR and JOHN PASTOR,

               Defendants/Counter-Plaintiffs.
_____/

OPINION AND ORDER REGARDING PLAINTIFF/COUNTER-DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____September 29, 2005_____

PRESENT:  Honorable Gerald E. Rosen
                   United States District Judge

I. INTRODUCTION

Plaintiff LaSalle National Leasing Corporation ("LaSalle") instituted this action

against Lyndecon, L.L.C. ("Lyndecon") and three of its principals, John Pastor, Craig

Pastor and Tim Pastor (collectively, the "Pastors") on February 3, 2003.  In its Complaint,

LaSalle alleges that Defendants breached a loan agreement they entered into as borrower

and guarantors with LaSalle and breached the guaranty agreements which secured the

loan.  The Complaint also requests an immediate accounting for and delivery of LaSalle's

1

bargained-for collateral.

On August 12, 2003, Defendants filed an Amended Counterclaim alleging five counts: (1) fraudulent misrepresentation; (2) innocent misrepresentation; (3) exemplary damages; (4) negligence; and (5) breach of contract.

This matter is presently before the Court on Plaintiff LaSalle's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss counts 3, 4, and 5 of Defendants' Amended Counterclaim. Defendants have responded to Plaintiff's motion. Having reviewed the parties' respective briefs and the record of this matter, the Court has determined that oral argument is not necessary. Therefore, pursuant to Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND

In 1999, Defendant Lyndecon, L.L.C., a Michigan limited liability company, was approached by representatives of Meridian Hospitality Corporation. Meridian wanted Lyndecon to purchase five Papa John's Pizza stores located in the State of Louisiana that were owned by Meridian. The parties came to an agreement of terms and Lyndecon ultimately entered into an Asset Purchase Agreement with Meridian Hospitality Corporation pursuant to which Lyndecon purchased certain assets owned by Meridian and used in connection with the operation of the five Papa John's restaurants in Louisiana. Shortly thereafter, Lyndecon entered into a Master Lease Agreement with Meridian Financial Corporation pursuant to which Lyndecon leased assets from Meridian Financial to be used in connection with the Papa John's restaurants.

2

The Master Lease Agreement and Asset Purchase Agreement were negotiated on behalf of Meridian by Michael McCoy, Meridian's Vice-President.  According to Defendants, during the negotiations, McCoy, on behalf of Meridian, stated orally and through the production of documents that the five Papa John's restaurants had always been profitable and that weekly gross sales averaged $12,000.00 per store.  Believing Meridian's statements to be true and in reliance upon the statements, Lyndecon purchased the restaurants and proceeded to enter into financing agreements with Meridian Financial to finance the transaction.

On May 3, 2000, with Meridian Financial as lender and Lyndecon as borrower, the parties entered into a Loan and Security Agreement to provide financing for Lyndecon's purchase of the restaurants. As part of the Loan Agreement, Michigan residents Craig, Tim and John Pastor guaranteed Lyndecon's performance and payment obligations under the loan.  Shortly after execution of the loan documents, Meridian assigned all of its interest in the Master Lease and Loan Agreement to LaSalle National Leasing.

Thereafter, on March 31, 2002, LaSalle entered into a First Modification and Extension Agreement with Lyndecon.  The modification extended the maturity date of the Loan Agreement from January 1, 2002 to April 1, 2003, provided for the same principal and interest amounts but modified slightly the amount of monthly installments, and contained a choice of law provision that the contract was to be governed under the laws of the State of Maryland.

3

Lyndecon defaulted under the Agreements, failing to make the payments due on July 1, August 1 and September 1, 2002. Consequently, LaSalle accelerated all amounts due thereunder and demanded full payment from Lyndecon and the Pastors. This lawsuit to recover for breach of the agreements ensued.

In answering Plaintiff's Complaint, Defendants counterclaimed alleging that at some point in time after the sales were consummated and the loan agreements executed, Lyndecon and the Pastors discovered that during the time that Meridian owned and operated the Louisiana Papa John's restaurants, weekly sales per store never exceeded $9,000.00, and in fact, the stores averaged far less than $9,000.00. According to Defendants, the "break-even point" for each store is $9,000.00 -- a figure that the representatives of Meridian allegedly knew during the negotiations.[1] Based upon the alleged misrepresentation by Meridian of the financial condition of the restaurants, Defendants claim that LaSalle, as Meridian's assignee, is liable to them for fraudulent and innocent misrepresentation, negligence and breach of contract. Defendants further seek to recover both compensatory and exemplary damages from LaSalle.

LaSalle now moves to dismiss Defendants' counterclaims for exemplary damages, negligence and breach of contract.

---

[1] The 1998 and 1999 Monthly Sales Revenues for the stores were provided to Lyndecon by Papa John's Corporate Headquarters after the agreements were executed by the parties. For 1998, the average weekly revenue for the five Papa John's stores was $8,589.00. For the first seven months of 1999 (before Lyndecon took over), the average weekly revenue for the five stores was $8,688.00.

4

III.  <u>DISCUSSION</u>

A.    STANDARDS APPLICABLE TO MOTIONS TO DISMISS PURSUANT TO
      FED. R. CIV. P. 12(b)(6)

      Fed. R. Civ. P. 12(b)(6) allows the court to determine the legal sufficiency of a

plaintiff's claims.  *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  Courts

considering a Rule 12(b)(6) motion must accept the well-pled factual allegations of the

complaint as true and construe all reasonable inferences in favor of the plaintiff.  *See*

*Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  However, the court is not required to

accept conclusions of law or unwarranted inferences of fact cast in the form of factual

allegations.  *Blackburn v. Fisk University*, 443 F.2d 121, 123 (6th Cir. 1971).

Accordingly, a court must determine "whether the plaintiff undoubtedly can prove no set

of facts in support of his claims that would entitle him to relief" under a viable legal

theory advanced in the complaint.  *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d

1101, 1109 (6th Cir. 1995), *cert. denied*, 116 S.Ct. 1041 (1996).

      The Court will apply the foregoing standards in deciding Plaintiff's Motion to

Dismiss the three counts of Defendants' Amended Counterclaim in this case.

B.    <u>CHOICE OF LAW</u>

      At the outset, the Court notes that the parties appear to be in agreement that only

Count 5 of the Amended Counterclaim for breach of contract is governed by the choice

of law provision contained in the Modification Agreement and, as such, only that one

5

count is governed by Maryland law.[2]  The parties further appear to agree that the tort

claims alleged in Counts 3 and 4 are tort claims stemming from the negotiations leading

up to the execution of the Loan Agreement and, as such, are governed by Michigan law.

*See AGA Gas, Inc. v. Wohlert Corp.*,  2000 WL 1478466 (W.D.Mich. 2000) (holding that

agreement's choice of law clause calling for application of Ohio law only governed

contract claims which arise out of the agreement, and that Michigan law, and not Ohio

law, applies to Wohlert's "non-contractual" claims of fraud and misrepresentation).  As

the court explained in *AGA Gas*,

> Fraud and misrepresentation are indeed tort claims. "Under Michigan law,
> tort claims are determined according to the law of the forum, unless there is
> a 'rational reason' to displace the forum's law." *Allmand Assoc., Inc. v.
> Hercules Inc*., 960 F.Supp. 1216, 1222 n. 3 (E.D.Mich.1997) (quoting
> *Olmstead v. Anderson*, 428 Mich. 1, 29-30, 400 N.W.2d 292, 305 (1987)).
> Given the choice of law provision, a reason may exist in this case to
> displace Michigan law on Wohlert's contract claim.  *See Imaging Financial
> Services, Inc. v. Lettergraphics/Detroit, Inc*., No. 97-1930, 1999 WL
> 115473, at *3 (6 th Cir. Feb. 9, 1999) (choice of law provision in parties'
> contract "may be a reason to displace Michigan law on the contract
> claims"). However, no reason exists to displace Michigan law on Wohlert's
> claims of fraud and misrepresentation, because Wohlert's alleged injury
> occurred in Michigan to a Michigan company. *Id*. Therefore, Wohlert is
> correct in arguing that Michigan law, rather than Ohio law, applies to these
> claims.

---

[2]  The Modification Agreement provides, in pertinent part, as follows:

8.    <u>Applicable Law, etc.</u>  This Agreement shall be governed by the laws
       of the State of Maryland and may be executed in any number of
       duplicate originals or counterparts. . . .

[Complaint, Ex. 2.]

2000 WL 1478466 at *2.

As in *AGA Gas*, all of the defendant/counter-plaintiffs are citizens of the State of Michigan and the parties do not dispute that the alleged injury occurred in Michigan. Michigan law, therefore, governs the pre-Loan Agreement tort claims.

C.   <u>DEFENDANTS MAY BE ABLE TO RECOVER EXEMPLARY DAMAGES</u>

LaSalle first argues that a commercial loan agreement whereby each party fully expected to profit from the transaction does not give rise to a viable claim for exemplary damages.  LaSalle, however, ignores the fact that Defendants here have not just pled a contract claim but also have alleged claims of fraudulent misrepresentation, innocent misrepresentation and negligence.  With respect to the claim of fraudulent misrepresentation, an award of exemplary damages may be appropriate.  *See e.g., Oppenhuizen v. Wenersten,* 2 Mich. App. 391 (1983) (allowing exemplary damages in an action for fraud against a defendant car dealer who misrepresented the validity of a forged title to a stolen automobile that he knew would be resold in the near future).  As indicated above, in order to grant a Rule 12(b)(6) motion to dismiss, the court must conclude that "the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief" under a viable legal theory advanced in the complaint. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 116 S.Ct. 1041 (1996).

Here, LaSalle has not shown that Defendants/Counter-Plaintiffs can prove no set

of facts in support of their claim that would entitle them to exemplary damages.

Therefore, LaSalle's motion to dismiss Count 3 will be denied.

D.   MICHIGAN DOES NOT RECOGNIZE AN INDEPENDENT TORT ACTION
     FOR AN ALLEGED BREACH OF DUTY OF GOOD FAITH AND FAIR
     DEALING

In Count 4 of their Amended Counterclaim, Defendants allege that Plaintiff's

assignor owed a duty to them to negotiate the sale of the restaurants in good faith and to

accurately represent the financial condition of the stores.  It is the breach of this duty that

forms the basis of Defendants' negligence claim.

However, the responsibility to negotiate with good faith and to engage in "fair

dealing" are duties imposed in contract.  *Nelson v. Northwestern Savings and Loan Ass'n*,

146 Mich. App. 505, 509 (1985).  And, Michigan does not recognize an independent tort

action for an alleged breach of a contract's implied covenant of good faith and fair

dealing.  *Ulrich v. Federal Land Bank*, 152 Mich. App. 194, 197 (1991).

Inasmuch as Defendants/Counter-Plaintiffs' claim arises solely out of implied

contractual duties it is clear that under these circumstances, pursuant to Michigan law

Defendants' counterclaim for negligence must fail.  Therefore, LaSalle's motion to

dismiss Count 4 will be granted.

D.   DEFENDANTS HAVE SUFFICIENTLY ALLEGED A COGNIZABLE
     BREACH OF CONTRACT CLAIM UNDER MARYLAND LAW

Under Maryland law, in addition to the express duties imposed by an agreement,

every contract imposes a duty of good faith and fair dealing in its performance.  *See*

8

*Paramount Brokers, Inc. v. Digital River, Inc.*, 126 F. Supp. 2d 939 (D. Md. 2000);

*Maryland National Bank v. Traenkle*, 933 F. Supp. 1290 (D. Md. 1996); *Food Fair*

*Stores, Inc. v. Blumberg*, 234 Md. 521, 200 A.2d 166 (1964). Defendants specifically

allege in Count 5 of their Amended Counterclaim that "Meridian had a duty of good faith

and fair dealing to Counter-Plaintiff which duty was breached resulting in damages" and

that "LaSalle, as assignee of Meridian, is liable for Counter-Plaintiffs' damages." *See*

Amended Counterclaim, ¶ 31. This is sufficient to allege a claim for breach of contract

under Maryland law.

<u>CONCLUSION</u>

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Plaintiff/Counter-Defendant LaSalle's Motion to

Dismiss is GRANTED, in part, and DENIED, in part. The Motion to Dismiss is

GRANTED with respect to Count 4 of the Amended Counterclaim but is DENIED with

respect to Counts 3 and 5.

SO ORDERED.


                              s/Gerald E. Rosen
                              Gerald E. Rosen
                              United States District Judge

Dated: September 29, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record
on September 29, 2005, by electronic and/or ordinary mail.

9

s/LaShawn R. Saulsberry
Case Manager